The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 19-1566, Clarus Therapeutics v. Lipocine. Ms. Borg-Green, whenever you're ready. Thank you, Your Honor. Good morning to all of you, Your Honors, and may it please the Court. Clarus respectfully requests that this Court reverse the Board's ruling that the Clarus common specification lacks a written description of an embodiment of the count. We request this reversal because the Board's decision is rooted in legal error and is unsupported by substantial evidence. Your Honors, we submit that in this case the facts are very straightforward. The Board found, and Lipocine did not contest in its appeal, that the Clarus common specification, in particular Table 1, describes to a person of ordinary skill in the arts a composition including the specific drug recited in the count, testosterone and decanoate, together with the specific lipophilic and hydrophilic surfactants of the count. So the only issue on appeal is whether the Clarus common specification further sets forth a written description of the inclusion of one co-solvent, polyethylene glycol, while excluding another, ethanol. But in this case, Your Honors, the Party's experts agree that a person of ordinary skill in the arts reviewing the Clarus common specification would understand that the inventor has contemplated that one or more co-solvents could optionally be included in the compositions of the invention, including those exemplified compositions in Table 1. Indeed, well, here's – excuse me, I'm going to interrupt for a moment. This is on the substantial evidence point. I mean, the Board went through the specification carefully and just said, hey, look, there's too much picking and choosing going on here. And that seemed to have been confirmed by the Lipocine's expert, which the Board credited. So how do you transcend that on a substantial evidence review? Your Honor, it's our view that Lipocine never made the argument, its expert never presented the argument before the Board that a person of ordinary skill in the arts would find that the number of selections to be made among co-solvents was too numerous to permit the person of ordinary skill in the arts from being able to understand the inventor's possession of an embodiment of the count. While Lipocine did present a sort of blazemarks argument to the Board, that argument was exclusively related to the selection of testosterone and decanoate as the drug. And that argument was considered and rejected by the Board. With respect to the selection of the co-solvent, Lipocine's only argument was that a person of ordinary skill in the arts, while recognizing that a co-solvent could be included and that there were only eight, would choose to prefer to include ethanol over polyethylene glycol. And it's our position that the evidence of which co-solvent a person of ordinary skill in the arts would believe would be superior or would be more effective in the composition is not relevant to whether or not there's a written description. Because in this case, we have a clear statement from the inventors that co-solvents can be included. There's a clear recitation among the eight listed that polyethylene glycol and ethanol are alternative options for co-solvents to be included. And that by itself conveys to the person of ordinary skill in the arts that the inventors included as part of their invention compositions such as the ones in example table one, which could include any one or more of those optional co-solvents. Well, that may be, but your problem is, isn't it, that you have here a negative claim limitation. And while the written description may have been adequate for something that was not a negative claim limitation, here you have a negative claim limitation and there's nothing in the specification that tells you to avoid using alcohol, nor is there a description of a combination which excludes alcohol. So, your Honor, I have two points to respond to that. One is that the example compositions in table one all are without ethanol. So, we submit that there are examples which exclude ethanol. But this court's precedent in the Sinteros and Enfi cases expressly states that in order for there to be a written description of a negative claim limitation, there is no requirement that the specification provide some rationale for contraindication or reason to exclude one alternative embodiment in favor of another. That it's sufficient where, in this case, eight co-solvents are described as alternative embodiments that can be included in the compositions of the invention, that that can alone provide the reason to exclude. And if we go back to the CCPA's earlier cases, there's a lot of discussion about cautioning against putting form over substance. It's not... Well, the way I read the Enfi case, it at least requires that you have identified the specific combination that satisfies the negative claim limitation. And as I understand it, in table one does not disclose the specific claim limitation. There may be items listed in there that exclude ethanol, but it's not the combination we're looking for. Well, in... Right. In table one, we have the combination of the drug TPU together with the specific lipophilic and hydrophilic surfactant in the absence of ethanol. And in the specification, the inventors state that co-solvents are optional. They're not required, but that they can be included. And then there's a clear indication of eight different co-solvents that can be selected from. They're presented as alternative. Dr. Elder, in his deposition testimony as a liposence expert, agreed that this language would mean that you could select only one to be included. And so in this type of situation where you have a small number of optional co-solvents that are given, we submit that that is sufficient to provide a written description of the composition of the count where you have three of the elements in the absence of ethanol already set forth by the inventors as their preferred combination, together with the clear statement that an additional co-solvent, such as polyethylene glycol, can be optionally included in that composition. Response. What's your response to the argument that the specification expressly says that they can be used in combination? In other words, it doesn't say pick one of these co-solvents and exclude others. It says you can use them all in combination. Well, that's correct, Your Honor, that when the inventors identify the use of co-solvents, they indicate that you can use them individually or in combination. And so I think the fact that they permit combinations doesn't negate the fact that it's clear to a person of ordinary skill in the arts that the inventors were in possession of each one of those embodiments. And the fact that they've identified them as alternatives tells the person of ordinary skill in the arts that you can pick one or you could choose to pick more than one, but each of those embodiments is something that the inventors were in possession of. And the fact that the inventors chose to claim the embodiment where they selected polyethylene glycol without including ethanol is within their choice because they had set forth a written description of all of them. And they're free to claim less than what they've described in their specification. There shouldn't be a requirement that they set forth every single permutation of every combination in order to show that they had possession. We couldn't admit in this requirement that excluding one of those is a preferred method? I'm sorry, Your Honor, I just couldn't hear the question. No, there's nothing in the specification that says to exclude any one of those co-solvents. That's correct, Your Honor. There's not an express statement that ethanol should be excluded. However, there is a statement in the specification that none of the co-solvents are required. There are examples which don't include ethanol, which would tell the person of ordinary skill in the arts that ethanol is not required. And then there's the affirmative statement that these compositions can optionally include any one of the eight listed co-solvents. And under this court's prior decisions, we submit that that disclosure is sufficient to support a finding that there is a written description. What's your response to the argument that I know your opponent is going to make, which is that our prior case law actually says you have to disclose them as mutually exclusive co-solvents in order for the mere reference to them to be enough? Well, Your Honor, I read those cases differently. When I look at the St. Harris case, in that specification, there was a disclosure of three alternative antacids, but in the claims, they claimed two and excluded a third. So that's not mutual exclusivity. That's them affirmatively claiming two in combination while excluding a third. And similarly, in the Enfield decision, in that case, it was clear in the specification and the court cited this in its opinion that there were embodiments which described circuits that received two ChIP-select signals. So while the court there wanted to confirm that these different ChIP-select signals could be used in the alternative, the fact that it also disclosed that they could be used in combination didn't defeat support for the negative claim limitation. So I read those cases differently. There's no discussion of mutual exclusivity. And indeed, the facts support that in those cases, the alternatives that were disclosed were not mutually exclusive. I think that the CCPA's prior cases are also instructive in this regard. If we turn our attention to the Snitzer v. Essel case, in that instance, it's similar in that there's a small number of options for the laser ion. There's also a list of different options for the laser matrix material. In that case, the argument was made that there were too many combinations and that it was impossible to envision that the inventors had possession of what they were claiming. But in that case, the CCPA held that when you disclose only 14 options, that a person of ordinary skill in the art can readily envision that any one of those options can be used. Well, your problem with that is that you might well be correct if there were no negative claim limitation here. But the problem is there is a negative claim limitation. And something more is required than merely the disclosure of the possibility of a particular combination. Well, your Honor, just two points there. In the Snitzer case, actually, that claim was directed to a consisting essentially of style of claim. And so by its structure, it actually did exclude certain embodiments. And to the extent that those claims would have included a combination of, you know, another laser ion, I submit that that would have materially affected the basic and novel properties. So there is an element of a negative claim limitation in the Snitzer case. But I also would direct your attention to the Court's discussion in Inti, where the Court emphasizes that there is no requirement that you provide some reason to exclude. There's no requirement that there be evidence of contraindication of the excluded element. All that's required is that you positively set forth the alternative embodiment, and then you can claim one and exclude the other. And that's exactly what the inventors did in this case. I see that I'm out of time. Yes. We'll reserve your rebuttal time, and let's hear from the other side. Thank you, Your Honor. Thank you. Ms. Fiorella, are you with us? I am, Your Honor. Good morning. Good morning, Your Honor. Please proceed. Thank you. Good morning, Your Honor. Natika Fiorella on behalf of the Appellee Lipozyne. May it please the Court. Your Honor, there are two distinct but related reasons that the Board's decision should be affirmed. The first is because substantial evidence supports the Board's finding that a skilled artisan would have to do too much picking and choosing from the specifications to get to the composition that's embodied in the interference count. The second reason, Your Honor, is because Clare has simply failed to show that just by listing a class of possible ingredients as options, that that alone is enough to require under the law a finding of written description for a composition that expressly includes one of those options, here, PEG, and expressly excludes another, here, ethanol. I'll begin with the first path to affirmance, Your Honor. As you know... The argument that you waived that because you never made that argument to the Board that your argument about picking and choosing only related to the TU. Certainly, Your Honor. With that, I would say that there really can't be any waiver here because the Board itself faced this decision, here, on the fact that there were too many selections to be made. Now, that's at A21 and at A31. So, the concept of waiver assumes that the Board wasn't able to consider an argument in the first place, that we didn't make an argument to the Board so they couldn't consider it. That's clearly not the case, here, because the rationale of the Board was, in fact, that there were too many selections. But even beyond that, Your Honor, we then repeatedly make arguments that are listed in our red brief at 22 to 23 before the Board. And I can point, Your Honor, to the pages in the record that show each one of those arguments. So, for example... So, where in the Board's opinion does it address this first argument, the blaze marks argument, if we can call it that, as opposed to the negative claim limitation argument? Your Honor, I would point you to A21. Where? In A21, the Board specifically says, while there is testimonial evidence on both sides of the issue, on balance, given the selections needed to be made within the 646 application, type of testosterone ester, presence and absence of ethanol, type of co-solvent, we are not persuaded that CLARIS was established for purposes of CLARIS Motions 2 and 3, entitlement to priority benefit by demonstrating an anticipatory embodiment. Okay. But that's the conclusion. That's not addressing specifically the blaze marks argument as opposed to the negative claim limitation argument. Your Honor, I would say that the Board's opinion starts by looking at whether or not you would pick TU. It does find enough blaze marks to direct a skilled artisan at least to TU. But what this conclusion tells us is that the Board then looked to what other selections needed to be made. One of those selections is what type of co-solvent. Have you got anything better than this language on A21? I would say that the language on page 31 also supports this idea that there was simply too much picking and choosing that needed to be done. And that's when the Board is addressing Dr. Aligi's testimony and says that his testimony expects one of skilled in the arts to choose various combinations and prescriptions to come up with the subject matter of the count, which is insufficient to establish a constructive reduction to practice of the subject matter of the count. So again, Your Honor, I would say that what the Board is saying here is there are simply too many decisions to be made. And there are not enough guideposts and there's not enough in the specification itself to tell a skilled artisan that, yes, this is what the inventor has invented. Instead, a skilled artisan would need to go and try and figure out what they could make or what they could arrive at based on the teaching. And that's more of obviousness, not a written description. So I would say both of those conclusions of the Board suggest that the Board understood that part of the issue here is are there disclosures in the specification that would guide a skilled artisan to make all the decisions necessary to arrive at the count? And again, we need to consider... The only decisions were which co-solvents to include and which to exclude. In other words, the key was disclosed. Yes, Your Honor. The Board did eventually find that there were enough glaze marks to direct a skilled artisan to select TU. But I would not say that that means that the only decision that needs to be made is whether one would include PEG and exclude ethanol. Instead, that's... I guess I would say using the analogy just because a skilled artisan would have enough glaze marks to get them somewhere into the middle of the forest doesn't mean that you can just ignore the fact that they have to follow glaze marks to get there in the first place. And to get out of the forest or get to the specific tree in the forest, you need more and more glaze marks. And at some point, what the Board seemed to recognize is it just becomes too much. So what I would say is you still need to consider the fact that there is not one single embodiment that expressly says, use TU, then add something, even though the specification actually teaches that with this invention, you don't need to add any kind of solvent. But okay, then you have to add something. Then you take a co-solvent instead of a digestible oil, which is also disclosed, 21 of them, and the examples actually at least include an example of an oil, never a co-solvent. But okay, then you have to take a specific co-solvent. And then when you get to the co-solvent, the only description in the specification is one paragraph that says eight of these can be optionally included alone or in combination. And there's no teaching as to why one would or that one would pick PEG. But importantly, that you would pick one of the listed eight. And then based on the exact same teaching that says you can use ethanol too, expressly exclude ethanol. So to get back to your question, Your Honor, certainly one of the decisions that needs to be made is do you pick PEG from that list and expressly exclude ethanol? But I would say that before you get to that point and starting at that point, ignore the fact that a skilled artisan would have to make a number of decisions before they got to that point. And, again, I'm happy to point out in the record where we made each of the arguments that I just reiterated about why one would pick PEG, why one would not understand to pick PEG, why one would not understand to add any kind of solvent and so forth, which I'm happy to provide right now if Your Honor would like. I think we've got the record. So what do you think the law requires before you can support a negative limitation? Your Honor, I would say that INSEE does require providing a reason to exclude. It just found that in INSEE you didn't need to specifically say one is better than the other, which is what happened in this chart. So there is still a requirement to find a reason to exclude the negative limitation. In INSEE that was found because the specification repeatedly treated the different BGR signals as alternatives, not options, not that one would understand you could pick both or you should pick both. And, in fact, there were tables that identified and distinguished between the different signals, suggesting, again, to the skilled artisan that they would understand to pick one. So the INSEE court found that that was enough in affirming the board. They found that that was enough to find written description support and a reason to exclude. Suppose we were to read INSEE as requiring only that there be a specific disclosure of a particular combination rather than leaving the skilled artisan to make choices. Would that standard be satisfied here? Does this specification disclose the particular combination excluding alcohol that we're talking about? No, Your Honor. I would say that it does not. As the board found, there is not a single embodiment or a single example that includes each one of the claimed limitations. My colleague on the other side points to Table 1. The Table 1 does not include PEG. So based on the argument that, well, just because it doesn't expressly list ethanol, that means a skilled artisan would understand you don't add ethanol. Well, that logic follows for PEG, too. If it doesn't show any PEG, a skilled artisan doesn't understand that the table or the 48 formulations in that table also include PEG. So to the extent INSEE is saying you do need to actually show an example or any disclosure of the limitations together, I would say that that standard is certainly not satisfied with this specification. Your Honor, I'd also like to talk a little bit about Snitzer. That has been a focus of the briefs and was also brought up here at argument. And I would just like to reiterate that that case is also different. As Judge Naik, I believe that you mentioned, it's certainly different because there is no negative limitation in that case. And more importantly, there's no mutual exclusivity. So there's not saying in Snitzer, here is a glass laser. Now, you need to pick an ion that activates it of this 14, but you also need to expressly not pick another one of those 14 ions. So right off the bat, I think that that makes this case different. But beyond that, coming back to kind of the pick-and-choose argument, the invention in Snitzer was a laser ion that activated the laser. So you had to pick. The skilled artist in reading it would know that they had to pick one of those 14. And there was a line in the opinion that basically said the specification suggested or emphasized that one of the skilled artists would just pick one of those 14, even though it said the in-combination language. Here, we don't have either of those situations. The specification, in fact, tells you you don't need to pick any solvent. One of the good things about this invention, the specification says, is that it can solubilize the TU or the testosterone ester because of the drug delivery system, and you don't need to add anything else. But fine, if you are going to add something else, then again, there's levels of decision making that need to be done. And that simply wasn't an issue in Snitzer because the skilled artist in you, you had to pick one. And I do think that that makes a difference because, again, these are very factually intense inquiries, and they're very dependent on exactly what the specification says and exactly what the claim requires. And particularly here on a substantial evidence standard, where the board did look through the specification, did comment on the expert testimony, and ultimately found that substantial evidence did not, that there was evidence in the record that suggested the skilled artist who would not understand the claimed composition to be disclosed is fully supported by the place and the passages of the board site. Finally, Your Honors, I'd just like to take a few minutes to discuss the verand versus reversal. If this court should side with Claris and find written description support, this case should still be remanded back to the board to determine priority. We've discussed in the red brief why that is. I'm happy to answer any questions on that. But in a nutshell, we presented evidence that we needed to present to get before the date that the board afforded Claris. We specifically said, and the board specifically found, that we showed no later than October 2005. We had created a composition that met all of the limitations. But in our priority statement, we actually preserved an earlier date. So at its very minimum, the case should be remanded for the court to hear that in the first instance. And I'd just like to address Claris' suggestion that this court should affirm the board's other ruling. We disagree with that. The board's other rulings have not been fully briefed here. Claris lost on its motion to accord benefit, and it appealed on that basis. We believe, as we've explained, that the board was correct in its decision on those motions. So we defended that ruling. And because we wanted the board, we didn't need to defend any other ruling. But should this court decide that the board was wrong on that point, remand is appropriate. And the court should not affirm on other grounds that have not been fully briefed here. Thank you very much, counsel. Thank you. Ms. Borg-Green, you have three minutes remaining for rebuttal. Thank you, Your Honor. I'd like to first address counsel for Lipocene's argument that they didn't waive the argument that there was too much picking and choosing. The fact that the board references some discussion about picking and choosing doesn't mean that Lipocene presented that argument to the board.  There is no evidence that is in this record. There is nowhere that Lipocene or his expert, Dr. Elder, ever took the position or offered the opinion that a person of ordinary skill in the art would believe that there was too much picking and choosing to select polyethylene glycol and exclude ethanol. There's never any blazemarks argument presented by Lipocene or Dr. Elder. There's never any discussion that a person of ordinary skill in the art would find there to be too much picking and choosing. And we know from this court's decision that we must look at written description as a question of fact from the perspective of a person of ordinary skill in the art. And the board is not permitted to substitute their own judgment in favor of, in lieu of what a person of ordinary skill in the art would think. In this record, the only evidence of what a person of ordinary skill in the art would think about the selection of co-solvents comes from Dr. Onigi, who offered his opinion that a person of ordinary skill in the art would readily understand that any one of those co-solvents could be included to the exclusions of others. So we submit that Lipocene did waive this argument before the board because they never presented any evidence to support it. And moreover, to the extent that the board's decision is based on some, you know, some evidence of too much picking and choosing, there is no evidence, there is no substantial evidence to support that opinion because that evidence was simply never part of the record. Similarly, the argument about no blaze marks was never made. So that can't be part of the record. There cannot be substantial evidence to support that. I also want to point out that in the Enfield decision, this course clearly says that they hold that Santeros did not create a heightened written description standard for negative claim limitations. And the properly described alternative features are sufficient to satisfy the written description standard of Section 112, Paragraph 1 for negative claim limitations. And so we submit that based on that statement of the holding in the Enfield case, that the record in Claris' comment specification is sufficient to provide a written description of the claimed polyethylene glycol in the exclusion of ethanol. There is no requirement, and Enfield did not find that there was a requirement of evidence of a reason to exclude. Indeed, in this case, when we look at the actual evidence, Dr. Elder agreed in his deposition that when you read this language that the inventor set forth in their specification, that you would understand that you can pick just one of those eight co-solvents. There's no need to have a teaching to exclude one because Dr. Elder agreed that there would be a fear amount of time. You can finish your sentence. Thank you. Dr. Elder agreed that a person of ordinary skill in the art would understand that language to mean that you could pick one, and that selection by itself would exclude the rest. There was no requirement to pick a combination. Thank you. We thank both counsel. We realize this is a challenge for all of us, and we appreciate your cooperation. The case is submitted.